**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.** _____

AIRBNB, INC.,

        Plaintiff

v.

CITY OF MIAMI BEACH,

        Defendant.

_____/

**COMPLAINT**

Plaintiff Airbnb, Inc. ("Airbnb") brings this action to enjoin and declare unlawful the enforcement against Airbnb by the City of Miami Beach ("Miami Beach" or the "City") of Ordinance No. 2018-4211 (the "Ordinance"), set forth in Chapter 102 of the Code of the City of Miami Beach. This action is brought under 42 U.S.C. § 1983, 47 U.S.C. § 230, the Court's equitable powers, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

1.      In September 2018, the City of Miami Beach enacted the Ordinance to regulate short-term rentals. Notably, the enacted version was not the original version proposed. Instead, the City initially proffered a regulatory scheme that violated well-established federal law. Specifically, it required Internet platforms like Airbnb—under threat of monetary penalty—to add mandatory fields to their websites for users to input registration numbers required by the City, for the platforms to police the validity of the content input by the users, and for the platforms to take down any content that appeared to be in violation ("Content Policing").

2.      When confronted with the legal infirmities of the original version, the City chose not to abandon the offending approach, but rather to add what appears on its face to be a new "safe

harbor" provision.  Specifically, the City added an alternate provision that allowed platforms like Airbnb to voluntarily deploy technology known as "geofencing" to block listings in certain restricted areas rather than engage in Content Policing.

3.      At the September 12, 2018 City Commission meeting introducing the Ordinance, the Mayor of Miami Beach expressly characterized this alternative as a "safe harbor" that platforms could "choose" instead of the Content Policing requirement:

> [T]he idea of the amendment, folks, is, look, we would like to give, if any of these platforms want to be good corporate citizens and simply say, "Hey, we're not going to rent in areas where it's not legal there for someone to be," this gives them an avenue by which they can show good faith, they can geocode out those addresses and those areas, and if they do that, even if somebody finds a way to get around all that, they will, it's almost a hold-harmless safe-harbor provision that I think makes the legislation much more—more defensible—but also encourages, if they choose, some of these platforms, to do the right thing, and actually not send their customers into our neighborhoods where people have an expectation that it's not a commercial residential neighborhood—it's not a commercial neighborhood.  So, that's really the purpose of it.…  We gave them a safe harbor.  That's why I asked … to put it in there, was so that they could easily comply if they chose to.

4.      Airbnb voluntarily opted for the "safe harbor" provision in good-faith compliance with the City's regulation, rather than abandon the platform protection afforded to it by federal law or engage in a legal fight with the City.  Airbnb has engaged in such voluntary efforts regardless of the legal standing of this safe harbor.  *See Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119, 1122 (9th Cir.  2003) (the federal Communications Decency Act is intended "to encourage *voluntary* monitoring" of third-party content by sites) (emphasis added).

5.      As the City's deadline for compliance with the Ordinance approached, and in a spirit of cooperation, Airbnb reached out to the City to share specifics about Airbnb's voluntary efforts to geofence.  The City expressed its appreciation for those efforts, but it also—for the first time—took the position that the Ordinance (despite its plain language) required *both* Content Policing and geofencing.

6.     This interpretation caught Airbnb by surprise.   As noted above, the City's interpretation contradicts the unambiguous text of the Ordinance as well as the City's prior statements about the two alternate compliance avenues.

7.     Despite Airbnb's extensive efforts to negotiate with the City in good faith about its interpretation and position, the City would not alter its position.   Relying on an indefensible reading of the Ordinance and ignoring the Mayor's stated purpose, the City refused to allow Airbnb to comply with this express statutory safe harbor, and instead threatened Airbnb with immediate enforcement of other provisions of the Ordinance that are preempted by federal law and violate the U.S. and Florida Constitutions.   In so doing, the City is acting unlawfully twice over:   it misinterprets its own Ordinance to close off an express safe harbor, and it threatens Airbnb with costly fines under the illegal Content Policing provisions of the Ordinance.   As a result, Airbnb is left with no choice but to file this lawsuit.

8.     The City's reading of its Ordinance to require both approaches is untethered from its law or any other authority.   The "safe harbor" nature of the geofencing provision is clear from the text of the Ordinance—home-sharing platforms like Airbnb can comply with the Ordinance by geofencing in lieu of complying with its Content Policing provisions.   Specifically, under the heading "Exceptions," the Ordinance states that the Content Policing requirements "shall not apply to … [a]ny platforms that integrate geofencing or geocoding within their respective mobile or web-based applications that prohibit property owners from listing those properties that are within a zoning district that prohibits short-term rentals."   Ordinance § 102-387(C)(1).

9.     The unlawful nature of the Ordinance's Content Policing provisions is also clear on their face.   Specifically, those provisions require that home-sharing platforms like Airbnb not list third-party advertisements for a "short-term residential rental on [their] platform[s]," unless the

advertisements display "City-issued" business tax receipt and resort tax registration certificate numbers. Ordinance § 102-387(A)(2). Functionally, this provision requires home-sharing platforms like Airbnb to create a mandatory field on their websites that third-party hosts must fill in with content specified by the City of Miami Beach, for Airbnb to verify such content, and for Airbnb to remove or prevent the publication of listings that do not provide such content. If a home-sharing platform fails to comply with these requirements, it may be fined up to $5,000 per violation. *Id*. § 102-387(B)(3).

10. The Eleventh Circuit has been clear that Section 230 of the federal Communications Decency Act (CDA) "block[s] civil liability when interactive service providers refrain from filtering or censoring the information on their sites." *Almeida v. Amazon.com, Inc*., 456 F.3d 1316, 1321 n.3 (11th Cir. 2006). But the Content Policing provisions of the Ordinance seek to do just that. In contravention of the Eleventh Circuit's clear and controlling precedent, the Ordinance penalizes Airbnb if it does not remove certain third-party postings from its website, *i.e.*, those that do not display the required registration numbers. *Id*. The Content Policing provisions are equally inconsistent with the CDA because they impermissibly regulate the structure and operation of Airbnb's platform by forcing Airbnb to create a mandatory field for registration numbers in third-party listings.

11. By imposing these obligations and duties on Airbnb, and costly liability for failure to comply, these provisions of the Ordinance treat Airbnb as the publisher or speaker of third-party content in violation of the CDA. And by imposing the same financial burdens on protected commercial speech based on the content of that speech, these provisions also violate the First and Fourteenth Amendments of the U.S. Constitution, and Article I, Section 4 of the Florida Constitution.

12. Airbnb relied on this safe harbor and integrated geofencing technology on its website that prevents displaying of listings for properties located in zoning districts in the City where short-term rentals are not allowed. Despite the City's surprising atextual interpretation of the Ordinance, Airbnb remains committed to reasonable compliance and has proceeded with geofencing.

13. Given the City's untenable position, however, Airbnb brings this lawsuit and seeks an injunction prohibiting the City from enforcing those provisions of the Ordinance that the City now maintains Airbnb must comply with and which squarely violate established federal and state law.

## PARTIES

14. Plaintiff Airbnb, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in San Francisco, California. It maintains a website that provides an online marketplace for people to list, explore, and book both short-term and long-term housing accommodations.

15. Defendant City of Miami Beach is an incorporated municipality located in Miami-Dade County, Florida.

## JURISDICTION AND VENUE

16. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 because Airbnb alleges an imminent violation of its rights under the Constitution and laws of the United States.

17. The Court may declare the legal rights and obligations of the parties in this action under 28 U.S.C. § 2201 because the action presents an actual controversy within the Court's jurisdiction.

18.     Venue is proper under 28 U.S.C. § 1391 because the Defendant is located and resides in this judicial district, and because a substantial part of the events giving rise to Airbnb's claims for relief occurred in this judicial district.

## FACTUAL ALLEGATIONS

### Airbnb Is a Leading Internet Platform for Responsible Home-Sharing

19.     Founded in 2008, Airbnb provides an Internet platform through which persons desiring to book accommodations ("guests"), and persons listing unique accommodations available for rental ("hosts"), can locate each other and contract directly to reserve and book travel accommodations on a short- or long-term basis.

20.     Airbnb's website, at www.airbnb.com, allows interested parties to advertise their accommodations, enables hosts and guests to locate and connect with each other, and provides a platform for hosts and guests to communicate and message one another directly to determine the material terms for their bookings.  Airbnb designed its platform to allow users to book rental transactions on the same website (or app) where they view rental listings.  To do so, it provides payment processing services that permit hosts to receive payments electronically.

21.     Airbnb does not charge hosts any upfront fees when they post their listings.  Instead, in consideration for use of the platform services, including its publication and booking services, Airbnb receives a service fee from both the guest and the host, which is determined as a percentage of the accommodation fee set solely by the host.

22.     Airbnb has no possessory interest in the property or accommodations that third-party hosts list on the platform.  Airbnb therefore is not a proprietor, owner, or operator of accommodations offered by hosts on the Internet platform.  As Airbnb's Terms of Service state,

Airbnb "does not own, create, sell, resell, provide, control, manage, offer, deliver, or supply any Listings or Host Services."

23.     Third-party hosts, and not Airbnb, decide whether to list their properties and with whom and when to transact on Airbnb, provide the content for their listings, including the listing location and description, set their own lengths of stay, and determine their own prices.  Airbnb's Terms of Service state that hosts "alone are responsible for their Listings and Host Services." Hosts also input the minimum and/or maximum days of stay for a particular rental.  Airbnb does not control the content that hosts create and is not responsible for it.

24.     As a general matter, Airbnb does not review the hundreds of thousands of third-party listings before the listings appear on Airbnb's marketplace.  Rather, the process for listing properties is automated, and once the host provides listing information, the listing appears on the Airbnb marketplace almost immediately.

25.     As part of the Airbnb Community Compact, the company is committed to helping promote responsible home-sharing to make cities stronger.  Airbnb has routinely cooperated with cities to increase host compliance with municipal laws, including through host-outreach efforts and by providing online tools for improved tax collection.  Airbnb has worked with cities to develop regulations that do not run afoul of Section 230 or the Constitution.

26.     Airbnb also advises its hosts and guests to be aware of and comply with local laws in listing and renting units on Airbnb.  The Airbnb Terms of Service state that "Hosts alone are responsible for identifying, understanding, and complying with all laws, rules and regulations that apply to their Listings and Host Services."  Airbnb also maintains a "Responsible Hosting" section on the Airbnb website, with a page devoted to the laws applicable to hosts listing in Miami Beach.[1]

---

[1] https://www.airbnb.com/help/article/890/miami-beach--fl

Airbnb provides a variety of general information for hosts about laws and regulations they should follow, including safety guidelines and property regulations.

27.     At present, there are approximately 4,500 active listings for rentals in Miami Beach on Airbnb's marketplace.

## The Ordinance

28.     Miami Beach Ordinance No. 2018-4211 imposes responsibilities on property owners advertising residential properties as short-term rentals, and on home-sharing platforms hosting such advertisements.  Ordinance § 102-386.  It defines a "short-term residential rental" as "a dwelling unit located within the City that is rented as, or held out as being used as, a shared housing unit, bed-and-breakfast establishment, or vacation rental."  *Id.* § 102-356.

29.     In general, the Ordinance provides that "owners of residential properties or units seeking to engage in the transient rental or occupancy of such properties or units will be legally required to provide their City business tax receipt ['BTR'] and resort tax certification ['RTCN'] numbers [collectively, 'registration numbers'] on any listings advertising their property."  Ordinance at 1.  Specifically, the Ordinance prohibits an owner from advertising a property or portion thereof for short-term rental unless she submits an affidavit to the City certifying that she has: (1) confirmed that City regulations authorize the property as a short-term rental; (2) obtained a valid BTR for the purpose of engaging in short-term rental; (3) registered the property and obtained the appropriate RTCN; (4) ensured the property complies with the Americans with Disabilities Act and applicable Florida codes; (5) obtained written authorization from the condo association, if relevant; and (6) "disclosed the business tax receipt number for each residential property or unit in the advertisement."  *Id.*  § 102-386(a)(1)(a)-(f).  An owner of a property that is within an apartment-hotel or condominium-hotel must also disclose within the requisite affidavit

8

whether the unit is affiliated with the building operator and provide that information to a guest at the time of the reservation.  *Id.* §102-386(b).  The Ordinance also requires an owner to "provide and conspicuously display the City-issued business tax receipt number and the resort tax certificate number in every advertisement or listing of any type in connection with the rental of the residential property."  *Id.* § 102-386(c).  "[F]ailure to comply with this requirement shall create a rebuttable presumption that the residential property is being operated without the proper registration."  *Id.*

30.     Penalties for owners range from a written warning for a first violation to a $5,000 penalty for a second violation, $7,500 for a third violation, and $10,000 for a fourth violation within the preceding six months.  *Id.* § 102-386(d)(1)(a)-(d).

31.     The Ordinance also imposes stringent requirements on every "hosting platform, advertisement platform, or short-term residential rental advertising platforming" (collectively, "platforms"), defined as "an internet-enabled application, mobile application, or any other digital platform that is used to connect guests with a short-term residential rental provider for the purpose of renting a short-term residential rental."  *Id.* § 102-356.

32.     Under Section 102-387, entitled "Prohibitions for publishing property listings on [platforms]," "[e]ach platform . . . will not list, or permit any person to list, any short-term residential rental on its platform, unless the platform":

      a.     "Posts a notice, in a conspicuous place on its website, advising short-term residential rental providers and property owners that such providers are required under this Article . . . to obtain a City-issued business tax receipt and a resort tax registration certificate in order to list a rental property on a [platform]," *id.* § 102-387(A)(1), and

b. "Must display the property owner's City-issued business tax receipt number and resort tax registration certificate number for each listing that appears on a short-term residential rental [platform]." *Id.* § 102-387(A)(2).

33. The Ordinance imposes significant penalties on platforms for non-compliance with these Content Policing provisions. Violations are punishable by escalating fines: a first violation by a fine of $1,000; a second violation within the preceding six months by a fine of $2,000; a third violation within the preceding six months by a fine of $3,000; and a fourth violation within the preceding six months by a fine of $5,000. *Id.* § 102-387(B)(1)(a)-(d). These fines accrue *per violation*.

34. The Ordinance, however, contains an express safe harbor compliance alternative to these requirements. Under the heading "Exceptions," the Ordinance states that these requirements "shall not apply to … [a]ny platforms that integrate geofencing or geocoding within their respective mobile or web-based applications that prohibit property owners from listing those properties that are within a zoning district that prohibits short-term rentals." Ordinance § 102-387(C)(1).

35. On November 9, 2018, the Chief Deputy City Attorney for City of Miami Beach informed Airbnb that it would begin enforcing the Ordinance in full by December 21, 2018. His letter stated:

> All hosting platforms must have the required information and/or tools in place to comply with the Ordinance and all new listings must be displayed in compliance with the Ordinance by **December 1, 2018**. Please be advised that any currently exiting listings must be in compliance with the Ordinance and display the property owner's business tax receipt number and resort tax registration by **December 21, 2018**. Should the property owner for the listing of those existing properties fail to comply with the requirements of the Ordinance by **December 21, 2018**, the hosting platform must de-activat[e] and prohibit[] … the advertisement of the property on the website until such time that the property owner attains compliance.

36.     Airbnb elected to voluntarily rely on the geofencing safe harbor.  It integrated technology on its website that both removes existing listings and prevents the displaying of new listings for properties located in zoning districts in the City where short-term rentals are not allowed.

37.     On November 30, 2018, Airbnb informed the City by letter that it would voluntarily comply with this geofencing safe harbor, rather than challenge the Ordinance as inconsistent with federal and state law.  And as a sign of good faith, Airbnb went a step further and had a meeting with the City on December 14, 2018, in which it explained to the City how it would voluntarily implement geofencing pursuant to the Ordinance's safe harbor.

38.     It came as a shock, however, when the City informed Airbnb for the first time on December 14—confirmed in a follow-up meeting on December 20—of its reading of the Ordinance that effectively eliminated this express safe harbor provision.  Specifically, the City asserted that it expected home-sharing platforms to comply *both* with the registration-number display requirements *and* the geofencing provision of the Ordinance.

39.     On December 17, 2018, counsel for Airbnb explained in a letter to the Chief Deputy City Attorney for City of Miami Beach why the City's reading of the Ordinance was incorrect:

> As we noted during our meeting. Section 102.387(C) of the Ordinance states "Exceptions.  This section **shall not apply** to: any platforms that integrate geofencing or geocoding [...]"  (emphasis added).  As such, we believe the plain text of Section 102.387(C) provides a safe harbor from liability under the Ordinance for platforms complying with geofencing.  Indeed, our understanding is that competitor platforms are planning on complying solely with Section 102.387(A), but not 102.387(C), and that the City views this as compliance under the Ordinance, which confirms that these provisions are alternatives, rather than cumulative.
>
> Your stated expectation of compliance with Section 102.387(A) in addition to Section 102.387(C) presents a significant challenge for us and is not supported by the plain text of the Ordinance. As discussed, Airbnb

continues to be concerned by the legal infirmities of the overall Ordinance and in particular its efforts to regulate platforms and advertisements in contravention of the protections afforded to platforms like Airbnb under the federal Communications Decency Act and the First Amendment.  Airbnb considers the geofencing safe harbor solution as a compromise position, but Section 102.387(A) remains an issue that we need to address with the City.

40.     At a follow-up meeting on December 20, 2018, the City adhered to its reading of the statute and threatened enforcement of Section 102.387(A), despite Airbnb's stated willingness to satisfy the requirements of what the Mayor himself described as the Ordinance's alternate "safe harbor" provision.

41.     Following the December 20th meeting, the City sent a letter to Airbnb stating that it would extend the deadline for hosting platforms to be in "full compliance with the requirements of the Ordinance" from December 21, 2018 to January 4, 2019.

42.     Airbnb voluntarily began implementing geofencing on December 1, 2018.  Under the City's belated misreading of the Ordinance, however, Airbnb still faces substantial fines under Section 102.387(A), which is preempted by federal law and violates the federal and Florida constitutions.

**Compliance with the Ordinance Would Impose Substantial Burdens on Airbnb**

43.     The City's construction of the Ordinance to mandate the Content Policing provisions leaves Airbnb no choice but to alter, remove, or prevent the publication of third-party content on its website by imposing draconian penalties on Airbnb if it "list[s], or permit[s] any person to list, any short-term residential rental on its platform" unless that listing contains valid registration numbers.  Ordinance § 102-387(A).  These requirements would force fundamental modifications to Airbnb's platform, erode customer goodwill, and require Airbnb to expend significant financial and technical resources.

44.     The prohibition on publishing third-party advertisements that do not display registration numbers would force Airbnb into a Hobson's choice.  For third-party listings that do not display registration numbers, Airbnb must either remove the listings or alter the listings to obtain the registration numbers from the third-party host or some other source, and then add a property's registration numbers in a mandatory field.  For third-party listings that do display registration numbers, Airbnb must either verify that the numbers are, in fact, "City-issued" or else prohibit or remove such listings.  Either way, the Ordinance would compel Airbnb to do *precisely* what the CDA prohibits—to monitor, review, alter, prohibit, or remove third-party content.

45.     Airbnb could not comply with this provision simply by looking at third-party advertisements to determine lawfulness, because the listings on Airbnb's website are not unlawful on their face.  Whether they include registration numbers or not, listings do not indicate whether the numbers are "City-issued," which Airbnb would need to verify through some undefined method.  And as noted above, in his November 9, 2018, letter to Airbnb, the Chief Deputy City Attorney for Miami Beach informed Airbnb that platforms under the Ordinance must "deactivat[e]" and "prohibit[]" the "advertisement" of properties on their websites "until such time that the property owner attains compliance."

46.     Notably, the Ordinance *does not* contain a good-faith exception for reliance on a host's potentially false number; in stark contrast, the Ordinance *does* include such exceptions in connection with its geofencing provisions. Ordinance § 102-387(C).  Given this statutory structure and the prospect of significant penalties, if Airbnb has any doubt about the lawfulness of a particular listing, it will likely have to remove the listing, even if the listing otherwise advertises a lawful short-term rental.

13

47.     Airbnb cannot complete the onerous required review with an automated click of a button.  Indeed, the information Airbnb would require to comply—namely, whether a property's registration numbers is "City-issued"—would not even be readily available to Airbnb.  The Ordinance provides *no* means by which Airbnb can find, or ascertain the validity of, a property's registration numbers.

48.     The burden to Airbnb of reviewing third-party content to alter, prohibit, or remove listings would not be measured solely by the static number of listings at a single point in time, but would be an ongoing and expanding burden.  There are at present approximately 4,500 active Airbnb listings in Miami Beach.  In the normal course of business, hosts can add new listings, change the status of listings, and deactivate listings every day.  Airbnb then, too, would have to monitor for every change constantly.  The Ordinance's requirements thus would cause a significant disruption to Airbnb's operations and impose substantial personnel and other costs on Airbnb (particularly because other cities have attempted to enact, and may continue to attempt to enact, similar regulatory requirements).  It also would injure the significant business goodwill that Airbnb has generated from the hosts and guests who have come to rely on its platform.

49.     Enforcement of the Ordinance also will cause Airbnb harm because Airbnb faces the threat of substantial penalties under a preempted law that violates its constitutional rights and will substantially disrupt its business and erode customer goodwill.

### CLAIMS FOR RELIEF

### COUNT 1:  VIOLATION OF THE COMMUNICATIONS DECENCY ACT, 47 U.S.C. § 230, AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS

50.     Airbnb incorporates paragraphs 1 through 49 as if fully set forth herein.

51.     The third-party hosts that create listings on Airbnb.com are persons responsible for the creation or development of information provided through Airbnb, within the meaning of 47 U.S.C. § 230(f)(3).

52.     The Ordinance violates and conflicts with 47 U.S.C. § 230, and Airbnb's rights thereunder, because it imposes duties and obligations on Airbnb that treat Airbnb as the publisher or speaker of information provided by another information content provider and derive from Airbnb's status as a publisher or speaker of third-party content, all in a manner prohibited by Section 230.

53.     First, the Ordinance provides that a platform "will not list, or permit any person to list, any short-term residential rental on its platform, unless the platform . . . display[s] the property owner's City-issued business tax receipt number and resort tax registration certificate number for each listing that appears" on the platform.   Ordinance § 102-387(A)(2).   Under the City's interpretation of the Ordinance, which eliminates the geofencing safe harbor, Airbnb has no choice but to comply with this provision.

54.     Section 230 of the CDA unambiguously bars efforts "'to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content.'"   *Dowbenko v. Google Inc.*, 582 F. App'x 801, 805 (11th Cir. 2014).   Section 102-387 expressly compels Airbnb to remove and/or alter content by requiring Airbnb to "display the property owner's City-issued business tax receipt number and resort tax registration certificate number for each listing that appears on" its platform.   Ordinance § 102-387(A)(2).   Specifically, if a third-party listing does not include registration numbers in a mandatory field, Section 102-387 requires Airbnb to remove that advertisement.   Alternatively, if a third-party listing does not include registration numbers, Airbnb must figure out whether the

advertised property has valid registration numbers, determine what those numbers are, and add them to the listing, *i.e.*, directly edit third-party content. Removing, monitoring, and altering content associated with third-party listings are protected publisher actions. This provision plainly treats Airbnb as a publisher of third-party rental listings on its website and therefore violates and conflicts with the CDA.

55. This provision also impermissibly requires Airbnb to alter the design and operation of its website through creating a mandatory field. Section 230 protects an Internet intermediary's decisions regarding "features that are part and parcel of the overall design and operation of the website" as to third-party postings. *Jane Doe No.1 v. Backpage.com*, LLC, 817 F.3d 12, 21 (1st Cir. 2016). By requiring Airbnb to create a mandatory field for registration numbers in each listing and to verify that this field in fact contains City-issued registration numbers—and, if it does not, to remove or alter that listing to include registration numbers—the Ordinance directly regulates the design and operation of Airbnb's website, in conflict with the CDA. What is more, requiring users to add content into a mandatory field is no different than editing each individual advertisement to include that content, which again is a direct regulation of publication activity.

56. The Ordinance separately is obstacle-preempted by the CDA because it stands as an obstacle to the CDA's core goals: protecting innovative online intermediaries like Airbnb from liability based on the activities of third parties, promoting the development of e-commerce, and preserving the vibrant free market for the Internet with minimal government regulation. The burdens the Ordinance places on platforms turn back the clock on Internet innovation, contrary to Congress's clear objectives.

57. The Ordinance is a "State or local law that is inconsistent with" Section 230, in violation of 47 U.S.C. § 230(e)(3).

58.     Enforcement of the Ordinance against Airbnb violates and is preempted by 47 U.S.C. § 230.

59.     The Ordinance interferes with or impedes the accomplishment of the full purposes and objectives of federal law, violates the Supremacy Clause, U.S. Const. art. VI, cl. 2, and is invalid and preempted.

60.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City to prevent its enforcement of the Ordinance, which would conflict with and violate the CDA.

## COUNT 2:  VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION
### (Content-Based Restrictions on Speech)

61.     Airbnb incorporates paragraphs 1 through 49 as if fully set forth herein.

62.     The Ordinance violates the First Amendment because it imposes content-based restrictions on commercial speech by requiring online hosting platforms like Airbnb to alter, monitor, remove, and prohibit the publication of advertisements that are not illegal on their face to avoid severe penalties.  *E.g., Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110, 1118–19 (11th Cir. 1992).

63.     Under the City's interpretation of the Ordinance, which eliminates the geofencing safe harbor, the Ordinance leaves Airbnb no choice but to alter, remove, or prevent the publication of third-party content on its website.  Ordinance § 102-387(A)(1).  It imposes significant monetary penalties on Airbnb if it "list[s], or permit[s] any person to list, any short-term residential rental on its platform" unless that listing contains valid registration numbers.  *Id.*

64.     The Ordinance both compels Airbnb to alter or remove third-party listings based on their content and places a financial penalty on speech-derived income by requiring Airbnb to

police speech on its platform before accepting listings for publication, and it targets protected commercial speech and disproportionately burdens platforms like Airbnb.

65.     The Ordinance constitutes a content-based restriction on speech because it applies solely based on the content of published rental listings on Airbnb's platform.

66.     The third-party advertisements on Airbnb's website are not unlawful on their face because they do not indicate whether a property complies with the City's short-term rental regulations.  Rather, for listings that do not display registration numbers, Airbnb must either remove the listings or alter the listings to obtain the registration numbers from the third-party host or some other source, and then add a property's registration numbers.  And for listings that do display registration numbers, Airbnb must either verify that the numbers are, in fact, "City-issued" or else prohibit or remove such listings.  Notably, the Ordinance does not contain a good-faith exception for reliance on a host's provided number.

67.     The Ordinance's burden on speech is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way.  For example, the City can directly enforce its short-term rental registration requirements against hosts.  The City has not shown, and cannot show, that less-speech-restrictive alternatives like this would not be an adequate means of achieving the City's policy goals.

68.     Enforcement of this provision against Airbnb therefore violates the First Amendment of the U.S. Constitution, as applied to the City by the Fourteenth Amendment.

69.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Airbnb seeks injunctive relief against the City's enforcement of the Ordinance because that enforcement would conflict with and violate the First Amendment of the U.S. Constitution.

### COUNT 3:  ARTICLE I, SECTION 4 OF THE FLORIDA CONSTITUTION AND CLAIM FOR INJUNCTIVE RELIEF, PURSUANT TO 42 U.S.C. § 1983 AND THE COURT'S EQUITABLE POWERS
### (Content-Based Restrictions on Speech)

70.     Airbnb incorporates paragraphs 1 through 49 as if fully set forth herein.

71.     The Ordinance violates Article I, Section 4 of the Florida constitution because it imposes content-based restrictions on commercial speech by requiring online hosting platforms like Airbnb to alter, monitor, remove, and prohibit the publication of advertisements that are not illegal on their face to avoid severe penalties.  *E.g., Braun v. Soldier of Fortune Magazine, Inc.*, 968 F.2d 1110, 1118–19 (11th Cir. 1992).

72.     The Ordinance leaves Airbnb no choice but to alter, remove, or prevent the publication of third-party content on its website.   Ordinance § 102-387(A)(1).   It imposes significant monetary penalties on Airbnb if it "list[s], or permit[s] any person to list, any short-term residential rental on its platform" unless that listing contains valid registration numbers.  *Id.*

73.     Article I, Section 4 of the Florida constitution provides at least the same level of protection as does the federal Constitution, because "the federal constitution represents the 'floor for basic freedoms, and the state constitution represents the 'ceiling.'"  *Warner v. City of Boca Raton*, 887 So.2d 1023, 1030 (Fla. 2004) (quoting *Traylor v. State*, 596 So.2d 957, 962 (Fla. 1992)); *see generally* 10A Fla. Jur. 2d Constitutional Law § 284.

74.     The Ordinance both compels Airbnb to alter or remove third-party listings based on their content and places a financial penalty on speech-derived income by requiring Airbnb to police speech on its platform before accepting listings for publication, and it targets protected commercial speech and disproportionately burdens platforms like Airbnb.

75.     The Ordinance constitutes a content-based restriction on speech because it applies solely based on the content of published rental listings on Airbnb's platform.

19

76.     The third-party advertisements on Airbnb's website are not unlawful on their face because they do not indicate whether a property complies with the City's short-term rental regulations.  Rather, for listings that do not display registration numbers, Airbnb must either remove the listings or alter the listings to obtain the registration numbers from the third-party host or some other source, and then add a property's registration numbers.  And for listings that do display registration numbers, Airbnb must either verify that the numbers are, in fact, "City-issued" or else prohibit or remove such listings.  Notably, the Ordinance does not contain a good-faith exception for reliance on a host's provided number.

77.     The Ordinance's burden on speech is not narrowly or appropriately tailored to promote a compelling or substantial interest on the part of the City, and is not likely to achieve any such interest in a direct and material way.  For example, the City can directly enforce its short-term rental registration requirements against hosts.  The City has not shown, and cannot show, that less-speech-restrictive alternatives like this would not be an adequate means of achieving the City's policy goals.

78.     Enforcement of this provision against Airbnb therefore violates Article I, Section 4 of the Florida constitution.

79.     Airbnb seeks injunctive relief against the City enforcement of the Ordinance because that enforcement would violate Article I, Section 4 of the Florida constitution.

**COUNT 4: DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201**

80.     Airbnb incorporates paragraphs 1 through 49 as if fully set forth herein.

81.     This action presents an actual controversy between Airbnb and the City concerning the validity of the Ordinance and its enforceability against Airbnb and other online hosting platforms.

82.     Based on the foregoing allegations, Airbnb is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Ordinance cannot be enforced against Airbnb because such enforcement would violate the CDA, 47 U.S.C. § 230; the Supremacy Clause, U.S. Const. art. VI, cl. 2; the First and Fourteenth Amendments of the U.S. Constitution, Article I, Section 4 of the Florida constitution; and Section 102.387(C) of Ordinance No. 2018-4211, set forth in Chapter 102 of the Code of the City of Miami.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Airbnb respectfully requests that the Court:

83.     Declare that, as applied to Airbnb and on its face, the Ordinance violates 47 U.S.C. § 230 and the Supremacy Clause because it permits the imposition of civil penalties on Airbnb for its publication-related activities and imposes duties on Airbnb regarding its protected editorial acts concerning third-party rental listings and its protected editorial decisions regarding the structure and organization of its website.

84.     Declare that, as applied to Airbnb and on its face, the Ordinance violates the First and Fourteenth Amendments of the U.S. Constitution and Article I, Section 4 of the Florida constitution because it places content-based restrictions on protected commercial speech by imposing severe penalties on Airbnb, and the restrictions the Ordinance imposes are not sufficiently tailored to promote a compelling or substantial interest by the City.

85.     Declare that, as applied to Airbnb, enforcement of the Ordinance violates Section 102.387(C) because it permits the imposition of civil penalties under an unlawful provision of the Ordinance despite Airbnb having availed itself of the Ordinance's express statutory safe harbor.

86.     Permanently enjoin the City, its officers, agents, servants, employees, and attorneys, and those persons acting in concert with them, from taking any actions to enforce

Section 102-387(A)(1) of the Ordinance and the other portions of the Code providing for enforcement and penalties that would penalize Airbnb—including any investigation, arrest, prosecution, or penalty—for: (a) failing to create a mandatory field displaying a third-party property owner's City-issued business tax receipt number and resort tax registration certification number on that third-party's listing; (b) failing to alter, remove, or prohibit from publication any short-term rental listing that does not include valid registration numbers or otherwise comply with the Ordinance; (c) failing to monitor and/or verify whether any short-term rental listing includes valid registration numbers or otherwise complies with the Ordinance.

87.     Award Airbnb its reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

88.     Award Airbnb such other and further relief as the Court deems just and proper.


Dated: January 4, 2019

Respectfully submitted,

AIRBNB, INC.,

By its attorneys,


/s/ David M. Buckner
DAVID M. BUCKNER (Fla. Bar No. 60550)
david@bucknermiles.com
BUCKNER + MILES
3350 Mary Street
Miami, FL 33133
Tel: (305) 964-8003
Fax: (786) 523-0485

CHAD GOLDER (*Pro hac vice* pending)
chad.golder@mto.com
ADELE M. EL-KHOURI (*Pro hac vice* pending)
adele.el-khouri@mto.com
MUNGER, TOLLES & OLSON LLP
1155 F Street NW, 7th Floor
Washington, DC 20004-1361
Tel: (202) 220-1100

Fax: (202) 220-2300

JONATHAN H. BLAVIN (*Pro hac vice* pending)
jonathan.blavin@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-4000
Tel: (415) 512-4000
Fax: (415) 512-4077